## H. B. WHITWORTH *v.* THE STATE.

1. THEFT — EMBEZZLEMENT.— The Revised Code of Procedure (article 714) not only re-enacts the provision of the original Code which made the offense of theft to include all unlawful acquisitions of personal property punishable by the Penal Code, but so enlarges the offense of theft as to include within it the offense of swindling and embezzlement. Therefore, under an ordinary indictment for theft a conviction may be had for embezzlement, provided the offense was committed since the Revised Codes took effect.

2. SAME — CONSTITUTIONAL LAW.— Said article 714 of the Revised Code of Procedure is not violative of the constitutional guaranty that a party "shall have the right to demand the nature and cause of the accusation against him."

3. SAME — EVIDENCE.— On the trial of the appellant under an indictment which in ordinary form charged theft of money from one J. in the year 1880, the State offered proof that appellant was a clerk of J., and in that capacity obtained possession of the money. The defense objected that the indictment was not for embezzlement, and that it contained no allegation to which the proposed proof was relevant. *Held* that, as the offense of embezzlement is now included within that of theft, the objection was correctly overruled.

4. SAME — CHARGE OF THE COURT.— In the state of case above indicated it was correct for the court, in its charge to the jury, to withdraw from them the issue of theft, and to submit that of embezzlement, with appropriate instructions upon the law of the latter offense.

APPEAL from the District Court of Erath. Tried below before the Hon. T. L. NUGENT.

The indictment was filed December 8, 1880, and charged that H. B. Whitworth, the appellant, did, on September 20, 1880, in the county of Erath, fraudulently take, steal, and carry away, from the possession of G. W. Jordan, one five-dollar United States currency note of the value and denomination of five dollars, and also two dollars of the current money of the United States, a more particular description of which was unknown to the grand jury. A trial was had during the term at which the indictment was found. The appellant was convicted, and his punishment assessed at imprisonment in the county jail for one month and a fine of $250. The facts of the case are peculiar.

The first witness introduced by the State was Jerome Darnell, a resident of Stephensville, the county seat, and an employee of Dr. M. S. Crow. He testified that, on the night of September 27, 1880, he was in the drug-store of W. A. George in Stephensville, and in company there with said W. A. George, and Dr. Crow. While there the witness received from W. A. George twenty-five dollars in money, consisting of five bills of $5 each. Dr. Crow then directed witness to go into Jordan's store and spend the money with the defendant. Witness went into Jordan's store, which adjoins George's drug-store, and told the defendant, who was Jordan's clerk, that he wanted some goods, and, after some examination, he selected a suit of clothes, a pair of boots, a shirt, an undershirt, and three pairs of socks; the prices of all the articles aggregating twenty-two dollars. In payment, the witness handed to the defendant the five bills he had received from Mr. George, and the defendant placed them in a drawer which he drew from under the counter, and then took from the drawer some silver half-dollars to the

amount of two dollars, and there not being enough to pay witness change, the defendant returned the silver to the drawer, and, remarking that he must get some change, took two of the bills paid him by witness, closed the drawer, and walked out of the front door of the store. In about a minute he returned and handed to witness the three dollars due him. Witness then took the articles he had bought, and carried them to his bedroom in Dr. Crow's residence, where Mr. George, Mr. Jordan and Dr. Crow examined them the next day, and they were then taken back to Jordan's store. Witness had not had any conversation with Mr. Jordan about the purchase of the goods.

W. A. George, for the State, testified that the defendant, prior to September 28, 1880, was a clerk in the store of T. R. Jordan & Co. in Stephensville. G. W. Jordan was in charge of that store on the 27th of the month aforesaid, when witness loaned him twenty-five dollars, which he requested witness to pay over to a person who would come that night to receive it. The money consisted of five bills of five dollars each, of which one was a United States currency note and the others United States National Bank notes. Each of the bills was worth five dollars. In company with and assisted by Dr. Crow, witness had, the same evening, put a mark on each of the same bills, to enable them to identify each bill; and before they were given to Jerome Darnell each of them was carefully examined by Dr. Crow and witness for the same purpose of subsequent identification, and witness took a memorandum of each one of them. The day after these bills were delivered to Darnell, G. W. Jordan brought three bills to witness, who, on examining them, found them to be three of the five bills delivered to Darnell the previous night. Soon after Darnell got the money witness saw him go towards Dr. Crow's residence, with some bundles, and the next day the witness went

there with G. W. Jordan, who recognized in some bundles a suit of clothes, a pair of boots, and some other goods as articles which had come from his store, and either he or Dr. Crow carried them back to the store. During the same day, September 28th, witness, while standing near the front door of Jordan's store, heard a conversation going on inside the store between Jordan and defendant, and distinctly heard defendant say "the devil must have been in me." One Barkley was also standing outside the store at the time. That night witness went with Jordan to defendant's house, for the purpose of witnessing defendant's signature to a deed. Defendant was found holding his horse by the bridle, and the horse was saddled. He never transacted business for Jordan after that day.

Dr. Crow was also introduced and examined by the State. Nearly all the facts stated by him appear in the testimony of the two preceding witnesses. He stated that it was an understanding between him and Jordan that the goods were to be returned to the store. On cross-examination he said that he and defendant spoke to each other when they met; that he had prosecuted defendant for embezzlement, several years previously, and they had not been intimate with each other since, though witness could not say they were unfriendly. "We are on tolerably good terms considering the circumstances," was the concluding remark of the witness.

G. W. Jordan, for the State, testified that on September 27, 1880, he, as the sole managing partner of the mercantile firm of T. R. Jordan & Co., was conducting a grocery and dry goods business in the store-house at Stephensville known as the Whitworth & Brumly building. At that date and for about fourteen months previous, the defendant was in the employ of the firm as a clerk, book-keeper and salesman, with authority to collect claims and transact the general business of the firm. On the said

27th of September, witness borrowed twenty-five dollars from W. A. George, and requested him to give it to some one, and to direct the person to go to witness's store and buy goods with it from H. B. Whitworth, the defendant. The next morning witness saw at Dr. Crow's house some goods which he recognized as goods from his store, viz., a man's suit of clothes worth $15, a pair of boots worth $3.50, a shirt worth $1.50, an undershirt worth $1, and three pairs of socks worth $1,— the aggregate value being $22. After witness went to his store that morning, the defendant told him that he, defendant, "struck" a man from the country the night before, and sold him fifteen dollars worth of goods, and received the money for them. On examination the witness found in the drawer three five-dollar bills, and afterwards carried the same bills to W. A. George. Each of the bills was marked. There was no money, except a few pieces of silver, in the cash drawer when witness left the store the night previous. Defendant's employment with witness was to expire on the 30th of September, 1880, and on the night of the 28th witness asked him to make out his account, showing how they stood, so that they might have a final settlement. Witness then went out of the store and returned in an hour or so, when defendant handed him an account, stating that it was a correct account of all matters between them. The account gave defendant credits by house-rent, $240, services $560, and cash $67, aggregating $867. It debited him "to amt. acct., $696.78," and thus showed a balance in his favor of $170.22.

Proceeding with his testimony, the witness Jordan stated that, after examining the account, he asked the defendant if he had given credits to witness for everything he was entitled to; and defendant replied that he had. Witness then asked him if he could think of nothing else; and he said he could not, and that the account was a correct statement of all matters between them up

to that time.   Then, says the witness, "I told him, while I was sorry to say it, I must say he had been robbing me. He asked me what I meant, or what I said? I repeated that he had been robbing me, and called his attention to several things for which I was entitled to credit, that he had not charged himself with on the account, and told him that if he would hand me his private memorandum book, I would show him others.   He then pulled out his book from his pocket and handed it to me.   I referred him to a number of items on it that he had gotten from my store to which I was entitled a credit on his account, and asked him why he had not included such items in the account just made out by him.   He said that he intended to settle for them some other time.   I then asked him, 'what about that seven dollars you stole from me last night?'  He answered, 'the devil must have had possession of me.'   He then told me he would make me a statement of everything he had taken from me, and began writing.   I told him that I had no confidence in him, nor in the correctness of any statement he might make, and that he needn't make out any such statement.   He then asked me if a deed to his interest in the Whitworth & Brumly building would satisfy me for what he had taken from me.   I told him that he knew better than I did how much he had taken from me.   The defendant then made out a deed to me for one-half interest in the building in which my store was, expressing in it a consideration of one thousand dollars, and delivered the deed to me and asked me not to prosecute him.   I told him that that was a matter I had nothing to do with; that other parties knew of it, and that I could not prevent a prosecution if I wanted to, but if I was called upon by the legal authorities I would have to state the facts as they were.   He then asked me what he must do.   I told him that under the circumstances he had better leave the country.   He then got an overcoat from me and left the store.   No one

except Whitworth and myself were in the store during the time of the conversation I have related. The conversation was one continuous conversation, and occurred about ten o'clock at night. W. A. George and Mr. Barkley were outside the store, near the door, when the conversation occurred." After defendant left the store, witness got W. A. George and Will Dodge to accompany him to defendant's house, to witness the deed. On reaching the place the witness called the defendant, who answered from the back yard, where he was holding his horse by the bridle. He acknowledged to signing the deed, and witness saw him no more until the succeeding Sunday, when he sent for witness to come to his house, where an interview ensued in which defendant told witness that he, the witness, had been violating the revenue laws by selling tobacco without license, and he, the defendant, could give witness trouble about it by informing on him, but would not do so if witness would not prosecute him; to which the witness replied by telling defendant to go ahead and prosecute, for that he, witness, could make him no promise not to prosecute him. Defendant never had witness's consent to appropriate to his own use the seven dollars described in the indictment.

On his cross-examination, the witness stated that a blotter, ledger and cash account were the only books kept by Jordan & Co. Generally the defendant made up the cash account at the close of each day's business, but sometimes witness made it up, and did so on the night of September 28th. The money received by defendant the night before should have gone on the cash account of the 28th. Witness kept a close watch on the cash taken in on the 28th, and was satisfied that the seven dollars retained by the defendant was not returned to the drawer that day. Witness had examined the books sufficiently to know that the seven dollars were never charged on them to defendant, nor included in the account rendered

by him to witness. Witness thought there were several
incorrect entries on the books in favor of defendant, but
could not tell how many, nor say how much of the ac-
count was incorrect. The total amount of all incorrect
items known to witness was less than one hundred dol-
lars. Defendant claimed to have loaned money to the
firm at different times, aggregating between sixty and
seventy dollars, with which the witness supposed defend-
ant credited himself as he should have done. Sometimes
defendant paid freight for the firm, and sometimes put in
amounts to make up cash demands against the firm. De-
fendant had the right to take what money of the firm he
wanted to, provided he accounted for it on the books, and
on that condition was authorized to take and use the
money paid in by Darnell. During the conversation be-
tween defendant and witness in the store, they were
twelve or fifteen feet from the front door, and W. A.
George and P. K. Barkley were just outside the door.
Witness did not have them there for the purpose of in-
timidating the defendant, and, though he heard them
talking himself, could not say whether the defendant did.
Witness let the defendant have the overcoat on credit,
and offered him a suit of clothes on credit, after he left
the firm's employment, and subsequently told defendant's
brother that he, witness, would supply anything needed
for defendant's farm or family. Witness felt safe in so
doing, because defendant's brother had in his possession
enough cotton belonging to the defendant to secure the
witness, and defendant had directed his brother to deliver
the cotton to witness. Defendant did not object to hand-
ing his private account book to witness, when the latter
asked for it. The next morning, however, the witness
discovered another private account book of the defend-
ant's; it was found among some goods close to where
witness and defendant were standing when the latter's
account book was called for by the former, who had

previously seen and examined it.   Defendant said he exe-
cuted the deed to witness in payment of what he had
"damaged" witness, and the latter regarded the deed as
a settlement of all accounts between them.   It was not
executed in consideration that witness would not prose-
cute the defendant.   Neither before nor after its execu-
tion did witness tell defendant he would not prosecute
him.

With the testimony of this witness, Jordan, the State
closed its proof.   The opinion indicates portions of it to
which exceptions were reserved by the defense.

The only witness introduced by the defense was P. R.
Barkley, who stated that it was in compliance with a re-
quest of G. W. Jordan that he was outside the latter's
store on the night of September 28th.

Counsel for appellant filed and forcibly urged a motion
for a rehearing, but it was overruled.

*Frank & Devine*, and *Kennedy*, for the appellant.   The
indictment does not charge the facts constituting embez-
zlement, nor does it inform the defendant of the charge
he is to answer; and a conviction for embezzlement
under an indictment which charges only theft, and which
does not charge that the defendant was an agent, clerk
or employee, nor that the defendant received the money
alleged to have been stolen by virtue of a fiduciary rela-
tion, is not by due course of law and is unconstitutional.
The State proved, over defendant's objection, that defend-
ant was the clerk of T. R. Jordan & Co., and that G. W.
Jordan had sole control of the business at Stephenville,
Erath county, Texas, and that the money alleged to have
been stolen was received in the course of such employ-
ment.

Embezzlement and theft are separate and distinct
offenses, essentially variant.   Penal Code, arts. 724, 786;
*Simco* v. *State*, 8 Texas Ct. App. 498; *State* v. *Johnson*,

28 Texas, 775. So that an indictment charging *only* theft can not charge embezzlement. The indictment must charge the facts constituting the offense in plain and intelligible language, and the offense must be included in the words of the indictment. The indictment must allege everything that it is necessary to prove. Code Crim. Proc. art. 419, part 7 and 421; *Alexander* v. *State*, 28 Texas, 486; *White* v. *State*, 3 Texas Ct. App. 606; *Horan* v. *State*, 7 Texas Ct. App. 188; *Bush* v. *Republic*, 1 Texas, 460; *State* v. *Schwartz*, 25 Texas, 767; *Hewitt* v. *State*, 25 Texas, 725; *Henderson* v. *State*, 1 Texas Ct. App. 438; *Longworth* v. *State*, 41 Texas, 162; Bishop's Crim. Law, vol. 1, § 807 *et seq.;* vol. 2, 332; Bishop's Crim. Law, vol. 1, §§ 325 and 418; vol. 2, § 315 *et seq.;* Wharton's Crim. Law, § 1969. It is necessary to prove the fiduciary relation and that the money came to defendant's hands in the course of his employment to sustain a conviction for embezzlement. Penal Code, art. 736; *Webb* v. *State*, 8 Texas Ct. App. 311; *Simco* v. *State*, Id. 408; *Gaddy* v. *State*, Id. 128 and authorities cited; *Griffin* v. *State*, 4 Texas Ct. App. 406. Code Crim. Proc. art. 714, part 6, does not change the established rules of criminal pleading which require an allegation of every fact necessary to constitute an offense; if so it is unconstitutional. State Constitution, art. 1, secs. 10, 19, 29; Webster's, Worcester's and Bouvier's Law Dictionaries, defining "*indictment;*" Code Crim. Proc. arts. 419, 420–7,. 21; *Hewitt* v. *State*, 25 Texas, 726; Bishop's Crim. Proc. §§ 95, 109, 110, 111. When the Constitution was adopted, the word "indictment" had a clear and well defined meaning which the Legislature cannot vary.

The Legislature evidently never intended to provide that a citizen should be tried upon an indictment for one offense, and be convicted of another and different one, essentially variant, and with which the indictment did not charge him. If so the Legislature has passed beyond

the limitations imposed by the Constitution.   We submit
that such a conviction is contrary to a natural sense of
justice, is unconstitutional, and would amount to the
greatest tyranny.   A citizen has the right to be informed
of the charge against him; a right guaranteed by the
Constitution; and in this case he is informed of one and
tried and convicted on another which this court has re-
peatedly held to be "separate, distinct and essentially
variant."  The tendency to simplify criminal pleading
should never go to such an extent as to deny a citizen a
right guaranteed by the Bill of Rights and dictated by
reason and justice.   The State cannot afford to mislead
her citizen by charging him with one offense, calling him
to the bar to answer that charge, and then requiring him
to answer another of which he has never had notice, and
has been denied the right of being informed.   With all
deference to the court in which the defendant was tried,
we submit that the trial upon this indictment and con-
viction for an offense not charged savors little of fair-
ness and justice.   The Legislature cannot legislate things
"separate, distinct and essentially variant" into one and
the same; no more can it legislate embezzlement into a
grade of theft.   Certainly the defendant has never been
tried upon an indictment which charges *embezzlement* in
plain and intelligible language, and the conviction upon
an indictment which does not is not "by due course of
law."  Certainly the indictment is not such as is guaran-
teed by the Constitution.

The court erred in permitting the State to prove, over
defendant's objection, that defendant was the clerk or
employee of G. W. Jordan, and that he received the
money alleged to have been stolen in the course of such
employment, when there were no allegations in the in-
dictment under which such evidence was admissible.
This substantially involves the rules already discussed.
The rule that there must be an allegation under which

evidence is admissible is rigorously enforced in civil practice, and the reasons for enforcing it in criminal practice are not less cogent.

The sale of the goods to Darnell was not an actual sale, but a device and pretense, so that Jordan acquired no property in the money by virtue of such pretended sale. The witness George testifies that he loaned Jordan $25, but no connection is shown between Jordan and Darnell, or that Darnell received the money for or on account of Jordan. And it is shown that the witness Darnell received the money from W. A. George but spent it at the request of Dr. M. S. Crow, and not at the request of G. W. Jordan. No connection is shown between Jordan and Crow in the matter.

The question as to whether or not Darnell received the money for Jordan was one of fact for the jury, and the court erred in excluding it from their consideration. Did the money belong to G. W. Jordan? Had Darnell kept the money, would Jordan have been responsible to George for it? Darnell did not come for the money; George gave it to him of his own accord. Darnell had no conversation with Jordan about the matter. It was shown that T. R. Jordan & Co. were indebted to defendant. The defendant had the right to repay himself any money due him, or to take any money he wanted if he accounted for it. The witness Jordan had not compared defendant's account with the books, nor examined them carefully to see if the account was correct; and the witness G. W. Jordan himself made up the cash account on that day.

The witness Jordan states that defendant had been in his employment fourteen months, and that he rented a building from him, and that defendant had loaned T. R. Jordan & Co. money. He had authority to repay himself or to use this identical money if he wanted to. We respectfully submit that the State has failed to prove a want of consent to the appropriation of the money. The prose-

cuting witness, *on cross-examination*, expressly says that defendant had authority to repay himself with the identical money alleged to have been stolen, or to use any money he wanted, if he accounted for it. When defendant had the consent of Jordan to the appropriation, there could be no want of consent.

The court erred in charging the jury that the evidence would not support the charge of theft, and in confining their attention to the charge of embezzlement, because such a charge assumed that a fiduciary relation existed between G. W. Jordan and defendant, and that the money alleged to have been stolen came to defendant's hands by virtue of such relation, if at all. The plea of not guilty put in issue every allegation of the indictment, and it was not conceded that defendant was a clerk or employee, or that he received any money in any capacity. The question as to whether that relation did or did not exist was solely for the jury.

The verdict is contrary to the evidence, in this, that the testimony of G. W. Jordan shows that the defendant had the right to appropriate the very money alleged to have been stolen, if he charged it to himself, or accounted for it. G. W. Jordan, himself, made up the cash account, and on demand defendant made a full and complete settlement with G. W. Jordan.

The verdict is contrary to the evidence in that the witness G. W. Jordan stated that "all the items incorrect within my knowledge are less than one hundred dollars," and that defendant had placed money into the business of T. R. Jordan & Co.; so that the firm of T. R. Jordan & Co. owed defendant at least $70, and the defendant had a right to repay himself. And there is no averment or proof that it was defendant's duty to account to G. W. Jordan at any particular time, or at any time whatever, and the court does not know judicially that it was defendant's duty to account to G. W. Jordan. 2 Texas, 776.

The verdict is contrary to law and the evidence, because the offense, if any, was theft and not embezzlement. The defendant received the money alleged to have been stolen, if at all, not in his capacity as clerk. It was his duty to sell goods, keep the books and collect accounts, etc., for T. R. Jordan & Co., and this was the extent of his employment. There was no sale by defendant to Darnell, and Jordan lost no property in the goods delivered to Darnell. The defendant's employment was to sell goods, collect accounts and to keep books. In this case no goods were sold, so that defendant did not receive the money in any manner within the scope of his employment. As Jordan acquired no property in the money by the pretended sale of goods, and as the goods were still in Jordan's possession, the defendant was in fact responsible only to Darnell for the money. Jordan was not pursuing the occupation of keeping money on deposit, and he acquired no property in the money by the fact that Darnell left it as a depositor with defendant, who in receiving it was acting without the scope of his authority and employment. He certainly could not as Jordan's clerk receive *payment* for Jordan's goods which were not sold (it is conceded that the sale was a pretense to entrap the defendant), for his employment in respect of the matter extended only "to selling goods and receiving pay;" so that the money never reached his hands in the course of his employment with Jordan. As he had sold no goods for Jordan, he received no pay for Jordan.

Counsel respectfully submit that a conviction for embezzlement upon an indictment which, according to the decisions of this court, charges an offense "*separate, distinct and essentially variant,*" would be a dangerous precedent, and entirely at variance with the spirit of our laws, which promise a trial upon such an indictment as is intended by the Constitution, and which informs the defendant of the offense he is to answer at the bar of public justice.

*H. Chilton*, Assistant Attorney General, for the State.

Winkler, J.    The appellant was indicted for the theft of money amounting in the aggregate to seven dollars, and was on the trial convicted of embezzlement. The controlling question presented for our consideration on this appeal is, whether an indictment which charges theft, in the ordinary language for charging that offense, and nothing more, will support a conviction for the crime of embezzlement, under the laws and the Constitution of this State.    In our opinion this question must be answered in the affirmative.

The statute law of this State enumerates certain offenses which include offenses of a less degree of culpability than the main offense charged. Thus it is provided that the offense of murder "includes all the lesser degrees of culpable homicide, and also an assault with intent to commit murder." Also there are provisions defining what minor degrees are included within the charge of assault; and so of various other offenses, as maiming, arson, burglary, theft, perjury, bigamy, adultery, riot, kidnapping, etc. The provision with regard to theft and applicable to the case under consideration is in the following language: "Theft, which includes swindling, embezzlement, and all unlawful acquisitions of personal property punishable by the Penal Code." Here we have a positive legislative declaration that the offense of theft includes that of embezzlement as a minor grade, or inferior degree of culpability, than that of theft. Code Crim. Proc. art. 714, subdivision six.

Again: the law provides that when, as in the present case, "a prosecution is for an offense consisting of different degrees, the jury may find the defendant not guilty of the higher degree *(naming it)*, but guilty of any degree inferior to that charged in the indictment or information." Code Crim. Proc. art. 713. So far as our

information extends it has been the practice of the courts to give effect to this latter article.

For example: Under an indictment which charges murder, a conviction for manslaughter, which is a lesser degree of culpable homicide, has invariably been upheld by both the Supreme Court and this court (the trial being regular in other respects), evidently upon the idea that manslaughter is included within the charge of murder, the only offense set out in the indictment. The same may be said as to other offenses which by the law are included within the major offense charged in the indictment, though minor in degree.

With reference to the present case it may be urged against the conviction that there is no relationship existing between the two offenses of theft and embezzlement, so that the latter can with propriety be said to be a minor grade or degree of the former. Such a position is, we are of opinion, untenable. In fact it is no longer an open question in this court that the two offenses are kindred offenses; and they have been so considered in several instances, notably in the opinion prepared by Judge Clark on the rehearing of the case of *Leonard* v. *State*, 7 Texas Ct. App. 443; and in *Simco* v. *State*, 8 Texas Ct. App. 406.

It will be noticed that article 714 of the Revised Code of Criminal Procedure contains the provision that theft includes swindling and embezzlement, and this revised article was in force when the present case was tried. As was said in Simco's case, " the offense of embezzlement, while nearly akin to larceny, and generally regarded as of that family, is nevertheless a distinct offense and essentially variant from the latter. Theft is the fraudulent taking of personal property under certain designated circumstances, and necessarily involves the idea of an unlawful acquisition. Embezzlement is the fraudulent conversion of similar property after its possession has been lawfully acquired. This variance (the opinion pro-

ceeds) in the character of the two offenses led the Legis-
lature, in the adoption of the Revised Code of Criminal
Procedure, to provide expressly that in a prosecution for
theft a conviction might be had for embezzlement, and
all unlawful acquisitions of personal property punishable
by the Penal Code (citing Code Crim. Proc. art. 714, clause
6). The conviction in that case was not sustained, for the
reason and only for the reason that the prosecution was
under the former Code, and because the revised provision
could not be held to relate back to and cover a case deter-
mined before the change took effect. In other words the
provision that under an indictment for theft the offense
of embezzlement was included could not, under *Callo-
way* v. *State*, 7 Texas Ct. App. 583, be made to act retro-
spectively. In our opinion Simco's case is in point, and
must be held decisive of the present case.

It is, however, contended in behalf of the appellant
that the law cited above, to the effect that theft includes
embezzlement, is in violation of the spirit and letter of
the Constitution. The argument advanced is (to state it
briefly) that, whereas the Constitution (Bill of Rights,
art. 1, sec. 10) provides "That in all criminal prosecutions
the accused . . . shall have the right to demand the
nature and cause of the accusation against him and to have
a copy thereof," therefore an indictment which charges
theft is not sufficient to inform the accused that he is
charged with an offense which will support a conviction
for embezzlement; that in this respect clause 6, art. 714,
Code Crim. Proc., is unconstitutional. In so far as the
question is involved in the present case, it will be suffi-
cient to say that it is not within the power of the courts
to decide that an act of the Legislature, a sworn body, and
a coördinate department of the government, is void merely
by reason of the policy or expediency of the enactment.
The law-making branch of the government decides for
itself as to the propriety or expediency of its enactments.

The courts can only declare a law unconstitutional when the Legislature shall have transcended the powers conferred upon it by the Constitution, which controls alike both the legislative and the judicial departments. It is a general rule that felony cases must be prosecuted by indictment, the Constitution having provided "that no person shall be held to answer for a criminal offense unless on indictment of a grand jury, except in cases in which the punishment is by fine, or imprisonment otherwise than in the penitentiary, in cases of impeachment, and in cases arising in the army or navy, or in the militia when in actual service in time of war or public danger." Sec. 10, art. 1. Hence the Legislature, under this provision, is deprived of the constitutional authority to dispense with an indictment of a grand jury, except in the several cases stated in the exceptions mentioned in the paragraph last quoted. But in the present case the defendant could have been prosecuted by information, it being but a petty theft, the property alleged to have been stolen amounting to only seven dollars in the aggregate. This, however, is of no importance to the question under consideration.

The indictment in this case informed the defendant that he was called on to answer a charge of theft of money alleged to belong to one Jordan. The indictment was sufficient to apprise the defendant of the nature and cause of the action against him, and the statute informed him that the jury might acquit him of the major offense charged therein and at the same time convict of the minor grade of the offense, which the Legislature has said is included within the greater; so that we are wholly unable to see that any provision of the Constitution has been impinged or infracted by the legislative enactment. The question is one of proof rather than one of pleading, somewhat analogous to the rule in indictments for assault with intent to murder. Now, if one be indicted for the

theft of property of a certain description, the property of
an individual named in the indictment, and on the trial
the proof should not be sufficient to warrant a conviction
for the major offense charged in the indictment, can he
be heard to complain at being convicted of an inferior
degree of the offense charged against him? Or can he be
heard to complain that the jury has convicted of a mis-
demeanor and not of felonious theft? Our conclusions
are that that portion of the Code found in clause 6 of
art. 714 of the Code of Criminal Procedure which author-
izes a conviction for embezzlement under an indictment
for theft must, under the authorities, be maintained by
the judiciary as not in violation of that provision of the
Constitution which declares that in all criminal prosecu-
tions the accused shall have the right to demand the
nature and cause of the accusation against him.

It is further argued by the appellant's counsel, and also
assigned as error, that the court erred in permitting the
State to prove, over objection by the accused, that the
defendant was a clerk or employee of Jordan, and that
he received the money alleged to have been stolen in the
course of such employment, when there was no allega-
tion under which such evidence was admissible. Whether
there was error or not in this proceeding is dependent
upon the main question already considered. If a convic-
tion for embezzlement is supported by an indictment for
theft, it must be so supported by such proof as would
constitute the offense for which the conviction was had.
Let it be supposed that under the indictment herein, the
State had proved the taking and the conversion of the
money by the defendant, but in the further progress of
the trial it had appeared that the defendant, at the time
of the taking and conversion, was a clerk and in the em-
ployment of the alleged owner; in such a case the prosecu-
tion must fail so far as theft is concerned, and unless a
conviction for embezzlement could be had under the in-

dictment, he must be acquitted on the ground that it had appeared that a trust or fiduciary relation between the accused and the owner had been shown. This testimony was properly admitted under the law in order to show that, if the major offense had not been committed, the minor had. Hence there was no error in admitting evidence of such facts as would constitute the minor offense.

Nor did the court err in withdrawing the issue of theft from the jury, and submitting to their consideration the single question of embezzlement. It was the duty of the court to charge the jury the law of the case as made by the facts testified to by the witnesses. The proof showing that the relationship between the owner of the money and the defendant was that of employer and clerk, whilst this testimony was not sufficient to warrant a conviction for that degree of fraudulently acquiring the property, known as theft, it at the same time established one of the relations between them which bring the taking and appropriation within the letter and spirit of the law which defines embezzlement, as that offense is defined by the Penal Code, art. 786.

With reference to the present case the indictment apprised the defendant as to the time and place he was accused of fraudulently taking and appropriating to his own use the property — money — of his employer, and whether at that time he was a clerk of the alleged owner or not was certainly a fact within his own knowledge; and hence the course of proceeding could not have been a surprise to him.

In our opinion the court, by the general charge and in the first special instruction given at the request of the defendant's counsel, gave to the jury full and complete as well as accurate instructions as to the law of the case as developed by the evidence adduced on the trial, and did not err in refusing to give the special charges Nos. 2 and 3, requested by the defendant's counsel. It is apparent

from the evidence and the charge of the court that there was a clear abandonment on the trial below of a prosecution for theft, and that the whole case turned upon the question of embezzlement. The main controversy, then, was as to whether under the indictment for theft a conviction could legally be found of embezzlement under the law. This was the main, the controlling question on the trial; the other questions are but mere incidents to this controlling question. The court below in its rulings took what we believe to be a correct view of the law of the case, and based its ruling upon the evidence; and in charging the jury as to the law seems to have kept in view the one controlling idea that under an indictment for theft a conviction could be had for embezzlement, if the proof warranted said verdict.

Whilst we have not attempted to consider *seriatim* the various questions presented in the interesting and able briefs presented in behalf of the appellant, yet we have carefully examined all the matters arising upon the record. Upon the whole our conclusions are that the indictment is sufficient under the law as cited to support the verdict of the jury and the judgment of the court; that the rulings of the court upon the evidence were correct, and that the jury were correctly instructed as to the law of the case as made by the evidence.

Finding no error in the proceedings, the judgment is affirmed.

*Affirmed.*

HURT, J., dissenting.